IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

CARROLYN S. POTTS                                                                                    PLAINTIFF

     v.                               Civil No. 2:13-cv-02210

CAROLYN COLVIN, Commissioner,
Social Security Administration                                                                 DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Carrolyn S. Potts, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claims for widow's disability insurance benefits ("DWB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 402(e), 1382c(a)(3)(A).  In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.     Procedural Background:**

Plaintiff filed her applications for DWB and SSI on May 11, 2011, alleging an onset date of January 1, 2008, due to reflex sympathetic dystrophy; obesity; high blood pressure, uncontrolled by medication; anxiety with depression and emotional outbursts; sacroiliitis; bursitis right shoulder joint; degenerative arthritis spine, including cervical; muscle spasms; musculoskeletal impairment; mental impairment; and, disabling fatigue. (T. 209). The Commissioner denied Plaintiff's applications initially and on reconsideration. (T. 65-77).  An Administrative Law Judge ("ALJ") held an administrative hearing on June 26, 2012. (T. 26-57).  The Plaintiff was present and testified at the hearing. Plaintiff was represented at the hearing by counsel, Laura J. McKinnon. (T. 28). Vocational expert, John Massey, also testified at the hearing. *Id.*

1

At the time of the hearing, Plaintiff was 59 years old and possessed a high school education. (T. 30). Plaintiff did not have any past relevant work ("PRW"). (T. 19, 30-34, 146). She last worked at a laundry facility in 1990; Plaintiff quit when she moved from Russellville to Clarksville, because she could not get a ride back to work. (T. 31, 139).

On February 15, 2013, the ALJ found that Plaintiff's borderline obesity, hypertension, chest pain, right subacromial bursitis, depression, and anxiety were severe, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (T. 14-15). The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c), except she is limited to no climbing of ropes, ladders, or scaffolds and no overheard work or reaching. (T 15-19). Plaintiff must avoid concentrated exposure to hazards. *Id.* Plaintiff is also limited to work where interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote, with few variables and requiring little judgment, and the supervision required is simple, direct, and concrete. *Id.* With the assistance of a vocational expert, John Massey, the ALJ found there exists jobs in the national economy the Plaintiff can perform, including working as a kitchen helper, or a hand packager. *Dictionary of Occupation Titles* ("DOT") No. 920.587-018; DOT No. 318.697-010.

The Appeals Council denied Plaintiff's request for review on April 3, 2013. (T. 1- 6). Subsequently, Plaintiff filed this action. (Doc. 2). This case is before the undersigned by consent of the parties. (Doc. 10). Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. 19, 20).

**II.	Applicable Law:**

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the decision of the ALJ. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)-(f)(2003). Only if the ALJ reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.  Discussion:

Plaintiff raised the following issues on appeal: (A) whether the ALJ erred in his RFC determination; (B) whether the ALJ failed to fully and fairly develop the record; and, (C) whether the ALJ erred in his reliance upon the vocational expert.

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and are repeated here only to the extent necessary.

#### A.  RFC Determination

Plaintiff argues the ALJ erred in his RFC determination by concluding that the Plaintiff could engage in medium work, when such a finding is supported by neither the medical evidence, nor the testimony.

RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).  A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).  "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009); *see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations). Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).

The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003); *see also Jones*, 619 F.3d at 971 (RFC finding must be supported by some medical evidence).  "Under this step, the ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect her RFC." *Id*.

After consideration of the entire record, the ALJ concluded the following:

> "The claimant has the RFC to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she is limited to no climbing of ropes, ladders, or scaffolds and no overhead work or reaching. She must avoid concentrated exposure to hazards. The claimant is also limited to work where interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote, with few variables and requiring little judgment, and the supervision required is simple, direct, and concrete." (T. 15)

5

In making this RFC determination, the ALJ considered all relevant evidence in the record, including medical records, observations of treating physician and others, and Plaintiff's own description of her limitations. (T. 15-19).

The ALJ correctly discounted the Plaintiff's credibility regarding the severity of the symptoms to the extent they were inconsistent with the RFC, due to her failure to seek consistent treatment during a claimed period of disability. *See Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment). Plaintiff's credibility was further damaged as it seems she was visiting the doctor simply to obtain disability benefits. The Eight Circuit has repeatedly held that visiting doctors in order to receive benefits does not support a finding of disability. *See Shannon v. Chater,* 54 F.3d 484, 486 (8th Cir. 1995).

Plaintiff allegedly injured her shoulder on December 25, 2006. (T.328). On March 12, 2007, she was diagnosed with reflex sympathetic dystrophy. (T. 328). She was prescribed and received six sessions of physical therapy from Johnson Regional Medical Center ("JRMC"). (T. 313). Plaintiff's last physical therapy session was on March 23, 2007. (T.313-315). On April 3, 2007, Plaintiff went to Clarksville Medical Group ("CMG") for a three week follow-up where they noted her right shoulder pain is markedly better and she had virtually overcome her injury in terms of function. (T. 327). Plaintiff was encouraged to remain physically active and encouraged to increase her strength and range of motion. (T. 327). However, this was Plaintiff's last follow-up for her right shoulder injury until July 27, 2011, four years later. (T. 304).

On the July 27, 2011 visit, Dr. John Dunham at CMG did not find reflex sympathetic dystrophy, but instead diagnosed her with right subacromial bursitis with a mild case of deltoid tendinitis of the tendons insertion laterally. (T.304). Plaintiff denied the comprehensive healthcare

6

plan offered to her. (T.304). Plaintiff did receive a shot for her shoulder during that visit, but she claims it did not help at all. (T. 42, 304). Dr. Dunham noted that the Plaintiff had not had any follow up since 2007, but was "now trying to get disability for [the injury]." (T. 304). This position was corroborated by the Plaintiff at the ALJ hearing. When asked why she waited four years to file for benefits, Plaintiff replied that nothing prompted her to file "other than the fact that my better half is 82 years old and he's not going to be around forever to take care of me." (T. 51).

The ALJ noted and summarized in his decision the Plaintiff's reported pain and impairments, including the presence of a sharp pain with use of her right shoulder, and that she can hardly lift her right arm without help from her left. (T. 16-17, 36, 43). Plaintiff reported she can perform household chores, including cooking, cleaning, laundry, caring for her sugar gliders, and yardwork, but not without pain. (T. 154-155, 159-165). Yet, outside of the state agency assessments and exams, there were few instances where the Plaintiff visited the doctor for her shoulder pain. Notably, as described above, there is a four-year period gap between visits, which encompasses the alleged onset date of the disability, January 1, 2008.

Plaintiff contends that her failure to seek treatment was due to her lack of insurance. (T. 38). A lack of funds may justify a failure to receive medical care. *Osborne v. Barnhart,* 316 F.3d 809, 812 (8th Cir. 2003). However, a lack of funds alone will not excuse a plaintiff's failure to obtain treatment or follow medical advice. The Secretary's regulations also provide that a claimant who fails to treat a remediable condition without good reason is barred from entitlement to benefits. 20 C.F.R. § 404.1518 (1980); 20 C.F.R. § 404.1530 (1983). Generally speaking, a lack of evidence that the claimant attempted to find any low cost or no cost medical treatment for her alleged pain and disability is inconsistent with a claim of disabling pain. *Murphy v. Sullivan,* 953 F.2d 383, 386-87 (8th Cir. 1992). Despite Plaintiff's contention she cannot drive the required 45 minutes to

7

closest the free clinic without anxiety, Plaintiff's failure to contact River Valley Christian in Dardanelle, Arkansas or any other clinics offering services to the uninsured or underinsured prevents us from concluding that her financial status excuses her failure to obtain consistent treatment. (T. 38-40). We also note that the record contains no evidence to indicate that Plaintiff was ever turned down for treatment due to her inability to pay for services.

As noted in the ALJ's opinion, Plaintiff sought treatment for problems other than the right shoulder during the relevant time period. (T. 17-19). On August 6, 2009, Plaintiff was seen in ER of JRMC with complaints of chest heaviness brought on by an anxiety episode. (T. 222). Plaintiff had elevated blood pressure and was put through several tests, including an EKG, but this did not reveal any evidence of myocardial ischemic damage, or any other abnormalities for a woman her age. (T. 221-223). She was discharged and prescribed 120 mg of Verapamil to help control her blood pressure. On September 22, 2009, Plaintiff had a follow up at CMG. (T. 259). Plaintiff claimed that her anxiety was better, and felt like the issue causing the ER visit was "just a one-time thing." (T. 259). Her medication was changed to Diltiazem 120 mg, upon her request, as it was a cheaper alternative. (T. 259). On November 23, 2009, the dosage was upped to 180 mg. (T. 257). Plaintiff received a refill of this medication on January 13, 2011, from CMG. (T. 256).

Plaintiff also began to seek treatment for anxiety and relationship problems from Counseling Associates in September through October of 2011. (T.19, 306). Plaintiff largely complained of physical problems, but explained she had some anxiety over health and finances, as well as relationship problems. (T. 306-309). She revisited Counseling Associates on June 27, 2012 where she reported a reemergence of her problems; the therapist discussed with her about not getting disability and her anxiety while driving. (T. 329). She visited Counseling Associates again

on August 16, 2012, where Plaintiff contended that she was not doing well physically and was upset about not getting disability. (T. 332).

To determine what limitations the Plaintiff suffered from, the ALJ relied upon a consultative examination by Dr. Clifford L. Evans.  Plaintiff's range of motion was limited to 90 degrees in forward elevation of the right shoulder. (T. 18, 281). Additionally, her Achilles reflex was 1/4 bilaterally. (T. 18, 282). Plaintiff was diagnosed with sacroilitis, bursitis of the right shoulder, degenerative arthritis of the cervical spine, and mild spasm. (T. 18, 283). She was assessed with a mild limitation to her body as a whole due to her right shoulder and lower back pain. (T. 283).

Plaintiff's contention is that this diagnosis does not address work related-residuals for her right shoulder. Specifically, Plaintiff argues it does not address the issue of reaching, an activity present in both of the DOT job listings given by the vocational expert, and the fact that Dr. Evan's assessed the mild limitation as to the Plaintiff's "body as a whole" rather than a specific body part. However, Dr. Evans' diagnosis reads, "mild limitation to body as a whole due to right shoulder [and] low back pain." (T. 283).  Thus, it would appear Dr. Evans' diagnosis is specific to Plaintiff's body parts. Most importantly, the diagnosis addresses the limitation of the right shoulder, which coupled with her limited range of motion in her right shoulder, provided a significant medical basis for the ALJ to address reaching in his RFC determination.

Therefore, the undersigned finds substantial evidence to support the ALJ's determination that the Plaintiff possesses the RFC to perform medium work with the listed limitations.

### B. Developing the Record

Plaintiff contends that the ALJ failed to develop the record. The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). In determining whether an ALJ has fully and fairly developed the record, the proper inquiry is whether the record contained sufficient evidence for the ALJ to make an informed decision. *See Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001).

While the ALJ has an independent duty to develop the record in a social security disability hearing, the ALJ is not required "to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). The Commissioner's regulations explain that contacting a treating physician is necessary only if the doctor's records are "inadequate for us to determine whether [claimant] is disabled" such as "when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§404.1512(e), 416.912(e).

Plaintiff argues that the record is not developed because it lacks adequate medical evidence to make a RFC assessment stemming from the entirety of her multiple impairments. Specifically, Plaintiff argues that the ALJ should have obtained medical evidence regarding her exertional limitations. However, we find that the record is sufficiently developed, as the Plaintiff was assessed exertional limitations during a consultative examination report, and there exists medical evidence from a treating source.

The Plaintiff was examined by Dr. Clifford L. Evans, at the behest of the state agency, on June 6, 2011 for the purpose of assessing exertional functions. (T.18, 278-283). Upon examination, it was found that Plaintiff's range of motion was limited to 90 degrees in forward elevation of the right shoulder. (T. 18, 281). Her Achilles reflex was 1/4 bilaterally. (T. 18, 282). No other abnormalities were found. (T. 18). Plaintiff was diagnosed with sacroilitis, bursitis of the right shoulder, degenerative arthritis of the cervical spine, and mild spasm. (T. 18, 283). Dr. Evans assessed the Plaintiff with mild limitation to her body as a whole due to her right shoulder and lower back pain. (T. 18, 283).

Medical evidence from Plaintiff's treating source, Clarksville Medical Group ("CMG"), is also present in the record. While exertional limitations are not specifically assessed, the medical evidence documents CMG's observations, diagnoses, treatment plans, and dealing with Plaintiff's alleged illnesses and other health problems that contribute to her impairments. (T. 321-328).

Plaintiff appears to be arguing for an assessment from a treating source regarding her exertional limitations. However, a doctor need be re-contacted only when the medical records are inadequate to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.912(e); *Jones v. Astrue*, 619 F.3d 963 (8th Cir. 2010). In the instant case, the record is adequate due to the medical evidence, State agency physician assessments, and Plaintiff's testimony as to her alleged disabilities. *See Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (the medical evidence, State agency physician opinions, and claimant's own testimony were sufficient to assess residual functional capacity); *Stormo v. Barnhart*, 377 F.3d 801, 807-08 (8th Cir. 2004) (medical evidence, State agency physicians' assessments, and claimant's reported activities of daily living supported residual functional capacity assessment).

Accordingly, after a full review of the evidence, we find the record contained sufficient evidence for the ALJ to make an informed decision. Further investigation into the exertional limitations of the Plaintiff is not required.

### C.  Reliance Upon Vocational Expert Testimony

Plaintiff contends that the ALJ erred in his reliance upon the vocational expert ("VE") due to inconsistencies between his testimony and the DOT. A VE must offer an explanation for any inconsistencies between her testimony and the DOT, which the ALJ may accept as reasonable after evaluation. *See Welsh v. Colvin*, 765 F.3d 926, 930 (8th Cir. 2014) (concluding that the ALJ had complied with SSR 00-4p because, in response to extensive questioning by the ALJ regarding inconsistencies, the VE offered evidence of her personal observations of the requirements of the proposed jobs and cited to a professional journal to support her recommendation). Absent adequate rebuttal, however, VE testimony that conflicts with the DOT "does not constitute substantial evidence upon which the Commissioner may rely to meet the burden of proving the existence of other jobs in the economy a claimant can perform." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 (8th Cir. 2014).

The RFC determination limited the Plaintiff to "no overhead work or reaching." (T. 15). Yet, both of the jobs given by the VE, kitchen helper and hand packager, require constant reaching. DOT No. 318.687-010; 920.587-018. Plaintiff argues because this supposed conflict was never addressed, the Commissioner failed to meet her burden at step five of the assessment. It would appear it is open to interpretation as to whether "overhead" applies to both "work" and "reaching" in the ALJ's RFC determination. Indeed, if "overhead" did not apply to reaching, the VE's testimony would be incompatible with the jobs given, since they require constant reaching. However, when the hypothetical question was posed to the VE during the hearing, the ALJ

12

specifically said, "limited to no overhead work or overhead reaching." (T.53). So, it would appear that the VE took that limitation into account, and did not prescribe a job that would require overhead reaching. Overhead reaching is a limitation to a direction of reaching. Constant reaching describes the frequency of reaching, not the direction.

There is no medical evidence or testimony suggesting the Plaintiff has difficulty reaching normally. Dr. Evans assessment found Plaintiff's range of motion only deficit with forward elevation of the right shoulder. This reinforces the position that the RFC refers to overhead reaching, rather than reaching in general, as it appears the Plaintiff is able to reach her right arm out in front her. Outside of Dr. Evans assessment, there is no documented limitation to Plaintiff's reaching. Plaintiff failed to seek out treatment for her pain, and failed to report any self-imposed restrictions to doctors.

Therefore, there is no inconsistency between VE's testimony and the DOT, and the Commissioner has met her burden at step five of the assessment.

**V.     Conclusion:**

Having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and the decision is affirmed. The undersigned further orders that the Plaintiff's Complaint be dismissed with prejudice.

DATED this 8th day of June, 2015.

/s/ *Mark E. Ford*
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE